**The below described is SIGNED.**

**Dated: May 08, 2009**

_____
**JUDITH A. BOULDEN**
**U.S. Bankruptcy Judge**



# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>C.W. MINING COMPANY, *dba* Co-Op Mining Company,<br><br>                     Debtor. | Bankruptcy Number: 08-20105<br><br>Chapter 7 |
| KENNETH A. RUSHTON, Chapter 7 Trustee,<br><br>                     Plaintiff,<br><br>v.<br><br>HIAWATHA COAL COMPANY, INC.,<br><br>                     Defendant. | Adversary Proceeding No. 08-2338<br><br>Judge Judith A. Boulden |

**MEMORANDUM DECISION DENYING HIAWATHA COAL COMPANY, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT, GRANTING THE CHAPTER 7 TRUSTEE'S CROSS-MOTION FOR SUMMARY JUDGMENT, AND STRIKING THE TRIAL DATES OF MAY 27 AND 28, 2009**

Before the Court are Hiawatha Coal Company, Inc.'s Motion for Partial Summary Judgment (Motion) and the Chapter 7 Trustee's Cross-Motion for Summary Judgment (Cross-Motion; together, the Motions). In the Motion, Hiawatha seeks a ruling that the Trustee is legally prohibited from assuming the 1997 Operating Agreement between the Debtor and C.O.P. Coal

Development Company (COP) under several provisions of the Bankruptcy Code. In the Cross-Motion, the Trustee asserts that the Court has already rejected the statutory arguments raised by Hiawatha — or that the Court should in any event rule in his favor now as a matter of law — and that summary judgment should issue in his favor because "the undisputed facts show that the only consideration paid by Hiawatha to the Debtor in exchange for the [transfers] was the alleged assumption of certain pre-existing debts."[1]

The Court took oral argument on the Motions at a hearing on May 1, 2009, and then took the matters under advisement. The Court has thoroughly reviewed the pleadings, considered the arguments of counsel, and conducted an independent inquiry into applicable case law. Now being fully advised, the Court hereby issues the following Memorandum Decision.

## I. FACTS

With two exceptions, the Court agrees with the Trustee that the Court has already ruled on the issues raised by Hiawatha in the Motion and in response to the Cross-Motion. Rather than restate the record in this Memorandum Decision, the Court hereby incorporates the findings of fact and conclusions of law contained in the following decisions and orders: (1) Amended Memorandum Decision Denying COP Coal Development Company's Motion to Require the Trustee to Assume or Reject Lease, and Granting Trustee's Motion to Extend Time for Trustee to Assume or Reject Executory Contracts or Unexpired Leases of the Debtor; (2) Order Grating [sic] in Part and Denying in Part Motion to Amend Memorandum Decision Denying COP's Motion for Trustee to Assume or Reject Lease and Granting Trustee's Motion to Extend Time to Assume Lease Filed by Standard Industries, Inc., World Enterprises, Security Funding, Inc.,

---

[1] Memorandum in Support of Trustee's [Cross-]Motion for Summary Judgment, p. 6.

ABM, Inc., C.O.P. Coal Development Company, Fidelity Funding Company, and International Association of United Workers Union; (3) Memorandum Decision Denying the Motion of Hiawatha Coal Company, Inc. for Relief from the Automatic Stay to Complete Utah Division of Gas, Oil, and Mining Reclamation Permit Requirements; and (4) Order Denying Hiawatha Coal Company, Inc.'s Motion to Alter or Amend the Memorandum Decision Denying the Motion of Hiawatha Coal Company, Inc. for Relief from the Automatic Stay to Complete Utah Division of Gas, Oil, and Mining Reclamation Permit Requirements.

In addition to the facts found by the Court in these decisions and orders and in response to the Trustee's allegation that the undisputed facts in the record show that the only value exchanged for the transfers from the Debtor to Hiawatha came in the form of prepetition debt assumption, Hiawatha offers the Declaration Under Penalty of Perjury of Elliot Finley in Support of Hiawatha Coal Company, Inc.'s Motion for Partial Summary Judgment and Opposition to Trustee's Cross-Motion for Summary Judgment (Finley Declaration). Paragraph 5 of the Finley Declaration alleges numerous sources of "value" that Hiawatha provided to the Debtor that did not constitute the assumption of prepetition debt, and the Trustee filed a Motion to Strike the Finley Declaration that was also argued at the May 1, 2009 hearing.[2] The Court will address the

---

[2] First, the Court notes that there are numerous and substantial inconsistencies between the "Additional Undisputed Facts" alleged in Hiawatha Coal Company's Opposition to Trustee's Cross-Motion for Summary Judgment (Opposition) and the Finley Declaration itself, which was executed and filed two days after the Opposition was filed. Second, in contravention of Local Rule of Practice 7056-1(b) of the United States Bankruptcy Court for the District of Utah, the Opposition contains only two specific references to the Finley Declaration in support of the various assertions of "value." Given the summary judgment posture of this issue, the Court will nevertheless consider the sufficiency of the Finley Declaration on its own merits without regard to the statements in the Opposition.

Finley Declaration, which provides the only possible source of relevant factual dispute, more fully in the Discussion section below.[3]

## II. DISCUSSION

Federal Rule of Civil Procedure 56(c), incorporated into this adversary proceeding by Federal Rule of Bankruptcy Procedure 7056, makes summary judgment appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[4] In applying this standard, the Court "examine[s] the record and all reasonable inferences that might be drawn from it in the light most favorable to the non-moving party."[5] There is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party,"[6] and "conclusory allegations that are unsubstantiated do not create an issue of fact and are insufficient to oppose summary judgment."[7] Summary judgment must issue against a party when that party "fails to make a showing sufficient to establish the

---

[3] The Court has considered and hereby rejects the Trustee's argument under Federal Rule of Civil Procedure 8(c) that Hiawatha has waived its right to raise any § 549(b) defense because of Hiawatha's failure to plead any such affirmative defense in its Answer and Amended Answer. Given the nature of this adversary proceeding and Hiawatha's assertion in its Amended Answer that "[t]he elements of 11 USC § 549 and/or 550 cannot be met as a matter of law," the Court finds that strict application of Rule 8(c) would be inappropriate.

[4] FED. R. CIV. P. 56(c).

[5] *T-Mobile Cent., LLC v. Unified Gov't of Wyandotte County, Kansas City, Kan.*, 546 F.3d 1299, 1306 (10th Cir. 2008) (internal quotes omitted).

[6] *Weigel v. Broad*, 544 F.3d 1143, 1157 (10th Cir. 2008) (*quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)) (internal quotes omitted).

[7] *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1136 (10th Cir. 2003) (internal quotes omitted).

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[8]

In addition, Federal Rule of Civil Procedure 56(e)(1) requires that "[a] supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."[9] A party opposing a proper summary judgment motion "may not rely merely on allegations or denials in its own pleadings; rather, its response must — by affidavits or as otherwise provided in this rule — set out specific facts showing a genuine issue for trial."[10] In turn, Local Rule 7056-1(b) requires that "[t]he responding party must number each disputed fact, refer with particularity to the portions of the record upon which the party relies, and, if applicable, state the paragraph number of movant's disputed fact. Material facts of record that are set forth with particularity in movant's statement of facts and that meet the requirements of Fed. R. Bankr. P. 7056 are admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party."[11] "Conclusory and self-serving affidavits are not sufficient,"[12] but

---

[8] *U.S. ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 944 (10th Cir. 2008) (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)) (internal quotes omitted).

[9] FED. R. CIV. P. 56(e)(1).

[10] FED. R. CIV. P. 56(e)(2).

[11] Local Rule of Practice 7056-1(b) of the United States Bankruptcy Court for the District of Utah.

[12] *City of Shawnee, Kan. v. Argonaut Ins. Co.*, 546 F.Supp.2d 1163, 1177 (D. Kan. 2008) (*quoting Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995)).

credibility determinations as to a party's affidavit is an issue to be addressed at trial rather than the summary judgment stage.[13]

Finally, the Complaint in this adversary proceeding is brought only under §§ 549(a) and 550 of the Bankruptcy Code, which authorize the Trustee to avoid and recover certain postpetition transfers of estate property that are only authorized under § 303(f). The Trustee's authority is limited only by § 549(b), as follows: "In an involuntary case, the trustee may not avoid under subsection (a) of this section a transfer made after the commencement of such case but before the order for relief to the extent any value, including services, but not including satisfaction or securing of a debt that arose before the commencement of the case, is given after the commencement of the case in exchange for such transfer, notwithstanding any notice or knowledge of the case that the transferee has."[14] "Section 549(b) is intended to protect . . . exchanges for value to permit continued operation of the business during the 'gap' period,"[15] and "value" under § 549(b) should be determined from the "giver's" perspective, namely Hiawatha.[16] There is some tension in the case law as to whether the "value" must be given prior to or contemporaneous with the transfer to qualify for the § 549(b) safe harbor, but the mere promise of future value is insufficient and the value must be "in exchange for" the transfer rather than for some other purpose.[17]

---

[13]   *Rose Marine Transp., Inc. v. Kaiser Aluminum & Chem. Corp.*, 758 F.Supp. 1218, 1222 (N.D. Ill. 1990).

[14]   11 U.S.C. § 549(b).

[15]   *In re Fort Dodge Creamery Co.*, 121 B.R. 831, 835 (Bankr. N.D. Iowa 1990).

[16]   *In re Oakwood Markets, Inc.*, 203 F.3d 406, 410 (6th Cir. 2000).

[17]   *See, e.g.*, *In re Pucci Shoes, Inc.*, 120 F.3d 38 (4th Cir. 1997).

In the Motion, Hiawatha alleges that the Trustee is legally unable to assume the 1997 Operating Agreement by operation of §§ 541(b)(2), 365(c)(1), 365(c)(2), and 365(c)(3). The Court has thoroughly reviewed its prior decisions and orders yet again as referenced in the Facts section above and finds that it has already addressed and rejected these statutory arguments. The Court has also addressed Hiawatha's Rule 19 argument in a separate decision, and there is no question that all the elements of § 549(a) have been satisfied. As such, the only possible issue that might remain for trial in this action is the existence and extent of the safe harbor provided by § 549(b) — namely, the extent of any value that Hiawatha gave "after the commencement of the case in exchange for" the transfers contemplated by the Purchase and Sale Agreement.[18] And the only possible source of relevant factual dispute on that issue is paragraph 5 of the Finley Declaration.[19]

The Court has thoroughly reviewed the Finley Declaration and finds each of paragraph 5's subparagraphs lacking in fatal respects:

---

[18] The one new argument raised by Hiawatha — which, along with the question of "value," is one of the two exceptions noted in the Facts section above that are not covered by the Court's existing decisions and orders — is that the District Court's Supplemental Order "may have been improvidently granted and illegal in the first place" because of changes in the Utah Rules of Civil Procedure that became effective in 2004. This Court does not read those changes as displacing or preempting DUCivR 69-1, which is still in effect.

[19] Despite Hiawatha's arguments to the contrary, it is indeed its own burden to raise a genuine issue of material fact at least as to the existence if not the full extent of "value" given apart from the assumption of prepetition debt. Hiawatha's Motion only alleges certain statutory bars to the Trustee's ability to assume the 1997 Operating Agreement, while the Trustee's Cross-Motion is what places § 549(b) at issue. Although there is still some question as to the scope of the assets actually transferred under the Purchase and Sale Agreement, Hiawatha has the burden at trial under Federal Rule of Bankruptcy Procedure 6001 of proving the validity of any postpetition transfer that did occur. It must also raise a genuine issue of material fact at this stage of the proceedings as the party opposing the Cross-Motion; otherwise, no permissible "value" was exchanged and the entire transfer from the Debtor to Hiawatha, whatever that may have included, must be avoided under § 549(a) and (b).

**5.a.** — Sections 3.01 and 24 of the Purchase and Sale Agreement provide that Hiawatha may, but is not required to, hire or pay some of the Debtor's former employees. And neither the Purchase and Sale Agreement, the Bill of Sale, the Closing Statement, nor Exhibit 3-A attached to the Finley Declaration provide foundation for the contention that assumption or payment of employee obligations was part of the "exchange for" the transfers or that Hiawatha itself actually assumed or paid those obligations.

**5.b.** — This subparagraph discusses the alleged value of property that Hiawatha received but says nothing about the value given by Hiawatha for the Purchase and Sale Agreement transfers. It also states a legal conclusion with which the Court has already disagreed.

**5.c.** — This subparagraph discusses the alleged value of property that Hiawatha received but says nothing about the value given by Hiawatha for the Purchase and Sale Agreement transfers. It is also hearsay.

**5.d.** — This subparagraph discusses the alleged value of property that Hiawatha received but says nothing about the value given by Hiawatha for the Purchase and Sale Agreement transfers.

**5.e.** — As with subparagraph 5.a., Hiawatha was not required by the Purchase and Sale Agreement to hire any of the Debtor's employees. Also, section 1.06 of the Purchase and Sale Agreement provides that Hiawatha may, but is not required to, purchase the Debtor's workers' compensation and general liability insurance "prepaid assets." At any rate, the allegation of value is too speculative, and Hiawatha's ongoing business operations for its own benefit do not qualify as "value" given to the Debtor in any event.

**5.f.** — Section 1.05 of the Purchase and Sale Agreement provides that Hiawatha may, but is not required to, acquire the Debtor's reclamation bonds. And neither the Purchase and Sale Agreement, the Bill of Sale, the Closing Statement, nor Exhibit 3-F attached to the Finley Declaration provide foundation for the contention that acquisition of the Debtor's reclamation bonds was part of the "exchange for" the transfers. At any rate, the obligation to the Utah Division of Oil, Gas and Mining was never actually assumed.

**5.g.** — Section 3.01 of the Purchase and Sale Agreement provides that Hiawatha may, but is not required to, pay the Debtor's trade creditors. And neither the Purchase and Sale Agreement, the Bill of Sale, the Closing Statement, nor Exhibit 3-G attached to the Finley Declaration provide foundation for the contention that payment of trade creditors was part of the "exchange for" the transfers or that Hiawatha itself actually paid those obligations.

**5.h.** — Neither the Purchase and Sale Agreement, the Bill of Sale, the Closing Statement, nor Exhibit 3-H attached to the Finley Declaration provide foundation for the contention that payment of royalties was part of the "exchange for" the transfers or that Hiawatha itself actually paid those obligations.

**5.i.** — As with subparagraph 5.g., Hiawatha was not required by the Purchase and Sale Agreement to pay any of the Debtor's trade creditors. Exhibit 3-I attached to the Finley Declaration is also devoid of any foundation to support who and how much was paid, by whom, when, and for what purpose.

**5.j.** — There is no indication that Hiawatha's payment of property taxes was "in exchange for" the Purchase and Sale Agreement transfers.

**5.k.** — Any interest that accrued on the prepetition secured creditors' assumed claims during the "gap period" does not qualify as "value" given under § 549(b). And neither the Purchase and Sale Agreement, the Bill of Sale, the Closing Statement, nor Exhibits 3-K(1) and 3-K(2) attached to the Finley Declaration provide foundation for the contention that assumption or payment of interest on these claims was part of the "exchange for" the transfers or that Hiawatha itself actually assumed and/or paid those obligations. Exhibit 3-K(2) is also devoid of any foundation to support who and how much was paid, by whom, when, and for what purpose.

**5.l.** — The final four subparagraphs all involve potential costs that Hiawatha's acquisition of the Debtor's assets allegedly prevented the Debtor from incurring. With respect to subparagraph 5.l., this allegation of value is too speculative and was not given by Hiawatha "in exchange for" the Purchase and Sale Agreement transfers. It is also redundant to the prohibitions of § 362 of the Bankruptcy Code, and it is essentially just an aspect of Hiawatha's alleged assumption of prepetition debt.

**5.m.** — This allegation of value is too speculative and was not given by Hiawatha "in exchange for" the Purchase and Sale Agreement transfers.

**5.n.** — This allegation of value is too speculative and was not given by Hiawatha "in exchange for" the Purchase and Sale Agreement transfers.

**5.o.** — This allegation of value is too speculative and was not given by Hiawatha "in exchange for" the Purchase and Sale Agreement transfers. Section 11 of the Purchase and Sale Agreement provides that Hiawatha may, but is not required to, assume any of the Debtor's existing customer contracts.

Accordingly, the Court finds either that the Motion to Strike should be granted or that the deficient portions of the Finley Declaration should be disregarded and given no weight.[20]  Either way, the Court finds that Hiawatha has failed to raise any genuine issue of material fact that would preclude summary judgment in the Trustee's favor.  The Motion is therefore DENIED, and the Cross-Motion is GRANTED.

### III.  CONCLUSION

Although § 303(f) protects the transferor during the "gap period" of an involuntary case, that protection is tempered by the Trustee's ability under § 549(b) to avoid such transfers to the extent that specific "value" was not given by the transferee.  In this case, Hiawatha has failed to adequately raise a genuine issue of material fact for trial regarding the existence of any value given to the Debtor for the Purchase and Sale Agreement transfers other than the satisfaction or securing of prepetition debt.  Accordingly, Hiawatha's Motion is DENIED, the Trustee's Cross-Motion is GRANTED, and the trial dates of May 27 and 28, 2009 are STRICKEN from the Court's calendar.  The Court will issue an accompanying Order to this effect.

----------------------------------------------END OF DOCUMENT------------------------------------------

---

[20] *City of Shawnee*, 546 F.Supp.2d at 1177.

_____ooo0ooo_____
**SERVICE LIST**

Service of the foregoing **MEMORANDUM DECISION DENYING HIAWATHA COAL COMPANY, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT, GRANTING THE CHAPTER 7 TRUSTEE'S CROSS-MOTION FOR SUMMARY JUDGMENT, AND STRIKING THE TRIAL DATES OF MAY 27 AND 28, 2009** will be effected through the Bankruptcy Noticing Center to each party listed below.


Michael N. Zundel
James C. Swindler
Andrew B. Clawson
**Prince Yeates & Geldzahler**
City Center 1, Suite 900
175 East 400 South
Salt Lake City, UT 84111
    *Counsel for Plaintiff*

Peter W. Guyon
**The Law Office of Peter W. Guyon, P.C.**
614 Newhouse Building
10 Exchange Place
Salt Lake City, UT 84111
    *Counsel for Defendant*